IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RREF RB-AL SLDL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:11-cv-925-MEF |
| | ) [WO – Publish] |
| | ) |
| SAXON LAND DEVELOPMENT, LLC, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **ORDER**

Before the Court is Plaintiff RREF RB-AL SLDL, LLC's ("RREF") Motion for Appointment of Receiver (Doc. # 14), to which Defendants Saxon Land Development, LLC ("Saxon") and Clifford W. Cleveland ("Cleveland") have responded. Upon consideration of the arguments of the parties, the evidentiary submissions, and the relevant law, the Court finds that Plaintiff's motion is due to be **GRANTED**.

Regions Bank made a loan to Saxon in the principal amount of $711,696.00 for Saxon's acquisition of certain real property located in Elmore County, Alabama. The loan is evidenced and secured by a promissory note and a mortgage. Regions assigned the loan and the original loan documents (the note and mortgage) to RREF RB Acquisitions, LLC, who assigned them to Plaintiff.

Plaintiff alleges that the Saxon loan is in default, with $712,721.23 in principal and interest due, and that Plaintiff intends to exercise its contractual rights and remedies under

the note and mortgage, including acceleration of the debt, entitlement to rents, and foreclosure. One such right set forth in the mortgage (Doc. # 1-2) is the right to have a receiver appointed: "Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the indebtedness . . . ." (Mortgage 4.)

Plaintiff states that the property has been "grossly mismanaged," which creates a danger of diminution in value thereof unless a receiver is appointed. (Mot. 7.) On October 7, 2011, a representative of Franklin Street Management Services ("Franklin Street"), Bruce Keen, inspected the property, and observed the following conditions: (1) no tenants or customers were using the storage facilities in the rear of the property; (2) the main structure is in "fair" condition; (3) surrounding areas of the property were dilapidated and abandoned; (4) the fence has been knocked over in many places; (5) the exterior of the property is littered with trash, wooden pallets, an abandoned tractor trailer, various signs and a half-full dumpster, all of which are visible from the higway; (6) the parking lot has no defined parking, many cracks, areas with standing water, botched repairs, and potential drainage issues; (7) the gravel lot and grassy areas are unkempt; (8) many of the storage facility doors are damaged; (9) the inside of the storage facility is littered with piles of wood, carpet, mattresses, clothing, flooring samples and other debris; and (10) the property is infested with cats.

Federal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction. *National P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998). Among the federal courts, "[t]here is a split of authority over whether the parties' advance consent to the appointment of a receiver in the mortgage documents is dispositive of the issue of appointment, or whether it is simply one factor among the others that a court must consider." *Fed. Nat. Mortg. Ass'n v. Mapletree Investors Ltd. P'ship*, No. 10cv10381, 2011 WL 1753112, at *3 (E.D. Mich. April 30, 2010) (collecting cases). As did the Eastern District of Michigan in *Federal National Mortgage Association*, this Court will consider (conservatively) that the receivership clause is only a "strong factor weighing in . . . favor" of appointing a receiver, *id.*, but need not resolve the above-described conflict because the appointment of a receiver is also warranted for equitable reasons. In short, Plaintiff's contractual right to a receiver, in addition to the observed condition of the property, weigh strongly in favor of appointing a receiver.

Accordingly, it is ORDERED:

(1)  Franklin Street Management Services ("Franklin Street") is hereby APPOINTED as Receiver authorized to take immediate possession and control of the Property herein described;

(2)  Defendants are ORDERED and DIRECTED to comply in all respects with this Order, and are hereby enjoined and restrained from impeding or interfering in any manner with the Receiver's exercise of its rights, powers, and duties

hereunder. From and after the entry of this Order, Defendants shall not enter into any lease, contract, or agreement of any kind or character relating to its assets, and shall not grant any lien upon or security interest in the Receivership Property;

(3) Defendants and their agents, employees, and principals shall cooperate fully with the Receiver in the conduct of its duties, and shall provide to the Receiver immediately any and all such information and access to any and all such people and records as the Receiver shall request;

(4) Defendants are hereby ORDERED and DIRECTED to deliver to the Receiver immediate unrestricted physical custody, control, and possession of the Receivership Property; and all rents, revenues, and proceeds of the Receivership Property, any and all proceeds from insurance claims related to the Receivership Property, and all surety bonds, letters of credit, security deposits, tax deposits, performance deposits, escrow deposits, keys, books, records, bank accounts, checkbooks, ledgers, accounts payable and accounts receivable records, leases, rent polls, reports, insurance policies and certificates, executory contracts, plans, specifications, drawings, surveys, operating procedures, warranties, records required to be kept under applicable safety and environmental laws, licenses, permits, proffers, entitlements, trademarks, service marks, trade names, intellectual property rights, claims,

causes of action, choses in action, and in general all other instruments, documents, rights, properties, or assets of any kind or character whatsoever (whether tangible or intangible and whether real, personal, or mixed) forming a part of or related to the ownership, development, use, operation, and management of the Receivership Property (collectively, together with all rents, revenues, or proceeds received by the Receiver at any time from or by virtue of the Receivership Property, the "Receivership Assets"), until such time as the Court orders otherwise;

(5) Defendants and their agents, servants, employees, and all other persons acting in concert with them, are hereby restrained and enjoined from: (i) withdrawing, paying, or otherwise transferring funds derived from the Receivership Property, except to the Receiver; (ii) removing, disposing of, destroying, concealing, changing, or altering the Receivership Property, whatsoever; (iii) removing, disposing of, destroying, concealing, changing, or altering any of the business records of Defendants relating to the Receivership Property; (iv) taking any action on behalf of Defendants or related to the Receivership Property without the express consent and permission of the Receiver; and (v) collecting any rents, revenues, proceeds, or other sums payable with respect to the Receivership Property.  Should Defendants come into possession of any such rents, revenues, proceeds, or other sums

subsequent to the date of entry of this Order, Defendants are ORDERED and DIRECTED promptly to remit the same to Receiver in the form received;

(6) All tenants, bailees, or other persons in possession of the Receivership Property, and current tenants of the Receivership Property, are DIRECTED to attorn to the Receiver, and until further order of this Court: (i) are hereby DIRECTED to pay over to the Receiver or its duly designated agent all rents, revenues, proceeds, or other sums payable with respect to the Receivership Property which are now due and unpaid or hereafter become due; and (ii) are hereby ENJOINED and RESTRAINED from paying to Defendants, or their agents, officers, directors, employees, or attorneys any such rents, revenues, proceeds, or other sums;

(7) The Receiver shall take immediate possession of, hold, secure, take charge of, preserve, and protect the Receivership Property and the Receivership Assets;

(8) The Receiver is authorized to take possession of all bank accounts containing funds associated with the Receivership Property, whether in the name of Saxon or any agents or employees of Saxon, wherever located, and to open, transfer, and change all bank and trade accounts relating to the Receivership Property, so that all such accounts are in the name of the Receiver;

(9) The Receiver is authorized to receive and take charge of the Receivership Property and any receivables, bank accounts, actions, and choses in action, and

all other property of any kind and every kind, character, and description wherever the same may be located or found and used in connection with the operation of the Receivership Property and reduce the same to possession and shall collect all outstanding accounts, receivables, leases, rents, bank accouts, actions, and choses in action, or other evidence of indebtedness, and may bring suit to recover the same in its own name;

(10) The Receiver is authorized to be named as an additional insured on any insurance policies covering the Receivership Property. The Receiver may, in its discretion, or at the direction of Plaintiff or its assigns, obtain additional insurance covering the Receivership Property, and such insurance expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Property;

(11) The Receiver shall manage, control, and operate Saxon's business to the extent necessary to facilitate the operations of the Receivership Property and to collect and use income, earnings, rents, and profits generated by the Receivership Property for the purpose of facilitating the Receiver's duties and to generally take any action which could lawfully be taken by the member(s) of Saxon to fulfill the Receiver's duties, including, but not limited to, negotiating new or existing leases, and exercising the sole authority of Saxon as to whether or not to file a bankruptcy petition;

(12) The Receiver is authorized to employ and to pay property managers, accountants, and any other persons and professionals, including attorneys, as the Receiver deems appropriate to perform its duties;

(13) Without limiting the foregoing, the Receiver is hereby authorized to use the personnel of the Receiver or hire on a contract basis, personnel necessary to manage, maintain, and preserve the Receivership Property to retain, hire, and terminate other personnel, and contract for and obtain such services, utilities, supplies, equipment, and goods as are reasonably necessary to operate, preserve, and protect the Receivership Property or to liquidate the Receivership Property, all as the Receiver may reasonably deem necessary;

(14) The Receiver shall prepare monthly financial reports to at the end of each calendar month, beginning with the first full calendar month after the entry of this Order, which relevant information requested by Plaintiff, or this Court, regarding the value, profitability, operations, and expenses of Defendants; such reports shall include, but are not limited to, a current rent poll, all cash receipts, cash disbursements, accounts receivable and accounts payable for the preceding calendar month, and copies of leases entered into with tenants for the preceding calendar month;

(15) The Receiver shall deliver such monthly reports to Defendants and Plaintiff, along with any other additional or relevant information obtained from time to

time by the Receiver in connection with the Receivership Property and the receivership, within three (3) calendar days from completion of such report;

(16) The Receiver shall pay the normal, ordinary, and necessary operating expenses of the Receivership Property from the rents and other revenues collected from the Receivership Property; and in the event that the rents and other revenues collected from the Receivership Property are insufficient to pay the normal, ordinary, and necessary operating expenses of the Receivership Property, including, but not limited to, the Receiver's fees, attorney's fees, costs, and agents' compensation, the Receiver is hereby authorized to borrow from Plaintiff or its affiliates, and they are hereby authorized, but Plaintiff is not obligated to, advance to the Receiver such funds as may be necessary to pay such costs and expenses (the "Receivership Advance"). The Receivership Advance shall be added to the outstanding indebtedness owing to Plaintiff by Defendants, shall bear interest at the Default Rate set forth in the Notes secured by the Mortgage, and continue to be secured by a fully perfected lien on the Receivership Property in favor of Plaintiff to the same extent, validity, and priority as Plaintiff holds via the Mortgage and the other Loan Documents without further action by Plaintiff. No personal recourse shall be had against the Receiver with respect to the Receivership Advance, and Plaintiff shall look to Defendants and the Receivership Property and its rights and remedies under

the Loan Documents to satisfy the Receivership Advance;

(17) The Receiver shall pay to Plaintiff on or before the 15th day of each month all receipts remaining, if any, after payment of the just and reasonable expenses of the Receiver to be applied to the indebtedness of Defendants to Plaintiff, pursuant to the Mortgage and other Loan Documents;

(18) Neither the Receiver nor Plaintiff shall be liable for any expenses incurred with regard to the Receivership Property, nor shall the Receiver or Plaintiff be required to use the Receivership Property for payment of any expenses incurred with regard to the Receivership Property prior to the date of this Order. Notwithstanding the foregoing, the Receiver may pay those expenses which were incurred in the normal and ordinary course of business of Saxon prior to the Receiver taking possession of the Receivership Assets if, and only if, the Receiver determines that payment of any such pre-existing expense is necessary and critical to the ongoing operation, maintenance, management, protection, and preservation of the Receivership Property. Otherwise, no expenses or debts that exist prior to the appointment of the Receiver are required to be paid by the Receiver. The Receiver shall not be required to perform under any contract or lease entered into prior to the date on which he assumes possession of the Receivership Assets;

(19) The Receiver shall be entitled to payment of a monthly fee consisting of

$500.00 per month; plus actual expenses and costs; plus an additional $150/hour for certain receivership duties, such as attending attorney meetings, depositions, hearings, *et cetera*. The Receiver shall not be required to give bond conditioned for the faithful discharge of its duties unless and until cause therefor is shown. The Receiver shall, however, remain insured during the term of this receivership under its existing insurance policies;

(20) The Receiver is hereby authorized to notify any parties obligated on any of the accounts of Saxon to make payment directly to the Receiver of any amounts due or to become due thereunder;

(21) The Receiver is hereby authorized to have continuing access to mail or other correspondence to and from Saxon concerning the Receivership Property;

(22) The Receiver shall take reasonable actions to ensure that it complies with all laws applicable to the operation of the Receivership Property as provided under any laws of the Untied States, the State of Alabama, and otherwise;

(23) The Receiver shall be entitled to the full use and benefits of any surety bonds, letters of credit, cash deposits, or similar existing arrangements securing any obligation owing by Saxon to any third party in connection with the Receivership Property;

(24) Without limiting the foregoing, Receiver is vested with all of the powers, rights, and duties provided under applicable law and the following specific

powers and rights all of which must comply with the terms herein: make repairs and alterations to the Receivership Property; undertake construction or repair of the Receivership Property, with such changes, additions, or modifications of the Receivership Property as the Receiver may deem appropriate or desirable; conduct, terminate, or continue, a marketing or leasing program with respect to all or a portion of the Receivership Property; employ a marketing or leasing agent or agents to do so, directed to the leasing or sale of all or portions of the Receivership Property under such terms and conditions as the Receiver may deem appropriate or desirable; subject to Court approval, conduct a receiver's sale of all or a portion of the Receivership Property, free and clear of all liens, claims and other encumbrances; employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as the Receiver may deem appropriate or desirable to implement and effectuate the rights and powers herein granted, and deeming the expenses of the same as an ordinary expense fo the receivership; execute and deliver such documents and instruments as are necessary to consummate authorized transactions on behalf of Saxon; enter into such leases, or modify the terms of existing leases, whether of real or personal property, under such terms and conditions as the Receiver may deem

      appropriate or desirable; enter into tenancy agreements, under such terms and conditions as the Receiver may deem appropriate or desirable; eject tenants or repossess personal or real property, as provided by law, for breaches of the conditions of their respective leases or other agreements; sue for unpaid rents and profits, payments, income, or proceeds in the name of Saxon; maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent; compromise or give acquittance for rents and profits, payments, income, or proceeds that may become due; and do any lawful acts reasonably requested by Plaintiff to protect the security hereof and use such measures, legal or equitable, reasonably requested by Plaintiff to implement and effectuate the provisions of the Mortgage or the Loan Documents;

(25)    The Court shall retain jurisdiction and supervision of all matters concerning the Receiver, the receivership created hereby and the Receivership Property. Any and all actions which affect the Receiver or the Receivership Property shall be brought in this Court. The Receiver may seek instructions and additional authority from this Court with both Plaintiff and Defendants having the ability to object to the same.

DONE this 23rd day of February, 2012.

                                                         /s/ Mark E. Fuller
                                           UNITED STATES DISTRICT JUDGE