IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RREF RB-AL SLDL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-925-MEF |
| | ) | |
| SAXON LAND DEVELOPMENT, *et al.*, | ) | (WO – Publish) |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff RREF RB-AL SLDL, LLC ("Plaintiff" or "RREF RB-AL") filed this action against Defendants Saxon Land Development, LLC ("Saxon"), Clifford W. Cleveland ("Cleveland"), and Richard M. Dorsey ("Dorsey") (collectively, "Defendants") to recover monies owed on a defaulted commercial loan. This cause is now before the Court on Plaintiff RREF RB-AL's Motion for Summary Judgment. (Doc. #45). Having reviewed the briefs of the parties, the evidentiary submissions, and the record as a whole, the Court finds that Plaintiff RREF RB-AL's motion is due to be GRANTED IN PART and DENIED IN PART.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine [dispute] of material fact." *Id.* at 323.  One of the ways the movant can meet this burden is by presenting evidence showing that there is no dispute of material fact. *Id.* at 322–23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine [dispute] for trial." *Id.* at 324 (internal quotations omitted).  "To avoid summary judgment, the nonmoving part may not rely on mere allegations, but must raise significant probative evidence that would be sufficient for a jury to find for that party." *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998).  Indeed, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

2

A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III. FACTS AND PROCEDURAL HISTORY

The Court has carefully considered the evidence submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to Defendants, as the non-moving parties, establish the following facts:

**A.     Facts**

Regions Bank ("Regions") made a loan to Saxon, the borrower, in the amount of $511,696.00 for the acquisition of real property located in Elmore County, Alabama. That loan was evidenced by a promissory note and secured by a mortgage dated May 29, 2003. (Doc. #33-1.) On February 19, 2008, Regions and Saxon agreed to modify this loan to increase it by an additional $200,000.00, resulting in Regions making Saxon a loan in the total amount of $711,696.00 (the "Saxon Loan"). (Doc. #33-1.) This loan is evidenced by a promissory note dated February 19, 2008, in the principal amount of $711,696.00 made by the borrower, Saxon, in favor of Regions.

As an inducement for Regions to make the Saxon Loan, Dorsey and Cleveland[1] (together the "Guarantors") unconditionally, jointly, and severally guaranteed payment of the loan and any sums due under the note.  The Cleveland guaranty is evidenced by a commercial guaranty dated February 19, 2008, made by Cleveland in favor of Regions. (Doc. #33-1.)  The Dorsey guaranty is evidenced by a commercial guaranty dated February 19, 2008, made by Dorsey in favor of Regions.  (Doc. #33-1.)  The note and guarantees, together with any other document or instruments evidencing or securing the Saxon Loan, constitute the "Original Loan Documents."

Regions assigned the Saxon Loan and the Original Loan Documents to RREF RB Acquisitions, LLC ("RREF") (the "First Assignment Documents") in March 2011.  RREF then assigned the Saxon Loan and the Original Loan Documents to Plaintiff (the "Second Assignment Documents") in August 2011.  The promissory note provides that "[t]he terms of this Note . . . shall inure to the benefit of the Lender and its successors and assigns[,]" making RREF RB-AL the holder of the note upon assignment.  (Doc. #33-1.)  The Original

---

[1]      It appears that Cleveland and Dorsey are co-owners of Saxon, but are no longer on amicable terms, likely because of this lawsuit and the events leading up to it.  As a result, Cleveland, who is a licensed attorney, has appeared in this action on behalf of himself and Saxon, while Dorsey has retained separate counsel, who has also appeared in this action on behalf of Dorsey and Saxon. In short, to fully muddle the waters, two attorneys have appeared in this action on behalf of Saxon and have submitted separate answers to the Amended Complaint and separate discovery responses on behalf of Saxon.  The Court cannot conceive of a legitimate reason why two attorneys, as officers of this Court, would submit two conflicting answers and conflicting discovery responses on behalf of Saxon.  While the Court strongly suspects that this duplicative representation is the result of childish quibbling between Cleveland and Dorsey, the Court will not tolerate such action in the future by any attorney who practices before it, much less attorneys who are as seasoned as the two who are purportedly both representing Saxon in this action.

4

Loan Documents, as assigned by the First Assignment Documents and the Second Assignment Documents, together with all other documents and instruments evidencing and/or securing the Saxon Loan, which were executed and/or delivered in connection with the foregoing, constitute the "Loan Documents."

The Loan Documents obligate Defendants to pay the principal and interest as it becomes due on the loan.  Specifically, the promissory note states that Saxon agrees to pay the lender, or its assigns, the principal amount of $711, 696.00, together with interest on the unpaid principal balance from February 19, 2008, until paid in full.  (Doc. #33-1.)  The guarantees further state that the Guarantors "absolutely and unconditionally guarantee full and punctual payment and satisfaction of Guarantor's share of the indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and Related Documents."  (Doc. #33-1.)   The Guarantors' share of indebtedness is a sum not to exceed $711,696.00 of the principal amount, plus interest thereon.  (Doc. #33-1.)  In addition to the above obligations, the Loan Documents further provide that Plaintiff is entitled to recover its costs and expenses, including attorneys' fees incurred in collecting the amounts due thereunder and costs of court.  (Doc. #33-1.)

Upon an event of default, which includes the borrower's failure to make any payment due under the note, the entire principal balance under the note and all accrued unpaid interest may be declared due immediately, without notice.  (Doc. #33-1.)  Moreover, the guarantees provide that the Guarantors "waive[] any right to require Lender . . . to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of

the indebtedness or of any nonpayment related to any collateral . . . to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor . . . [or] to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person[.]"[2] (Doc. #33-1.)

In support of its summary judgment motion, RREF RB-AL relies on the pleadings, including the affidavit of Andrew Bezlia[3] ("Bezlia"), which was filed in support of Plaintiff RREF RB-AL's Motion for Default Judgment, or in the Alternative, Summary Judgment (Doc. #36, Ex. 2), as well as Defendants' responses to Plaintiff's requests for production (Doc. #47, Exs. 1, 2 & 3).   In its Joint Response to Motion for Summary Judgment (Doc. #53), Defendants rely on, and, in fact, simply resubmit, Plaintiff's evidentiary submission in support of Plaintiff's summary judgment motion (Doc. #54-1.)   This evidence shows that there is no genuine dispute that Saxon executed the note and received the proceeds of the loan, or that the Guarantors signed their respective guarantees.[4]   (Doc. #47, Exs. 1, 2 & 3.)

---

[2]   This negates Defendants' argument that Plaintiff's failure to present evidence that it gave notice and demand to Defendants precludes the entry of summary judgment.  Any such notice and demand was expressly waived by Defendants.

[3]   Bezlia is an Associate of Rialto Capital Advisors, LLC, which has express authority to service, execute, endorse, deliver, acknowledge, as well as issue statements for and seek to collect any loan acquired or held by RREF or any single purpose entity owned by RREF.  RREF RB-AL is a single purpose entity owned by RREF, and, as such, Bezlia has custody and control of its business records related to this transaction and has properly authenticated these records for purposes of Plaintiff's summary judgment motion.  (*See* Affidavit of Andrew Bezlia ("Bezlia Aff."), Doc. #36-2.)

[4]    Given that two sets of discovery requests were propounded upon Saxon to its two different lawyers, there are some minor discrepancies between the responses submitted on Saxon's behalf by John Robert Fault, counsel for Dorsey and Saxon, and those submitted on Saxon's behalf

There is also no genuine dispute that Saxon failed to pay all amounts due under the Loan Documents and has not paid or caused to be paid all amounts outstanding under the Loan Documents.  (Doc. #47, Exs. 1, 2 & 3.)  Finally, there is no genuine dispute that the Guarantors have not paid or caused to be paid all amounts outstanding under the Loan Documents.  (Doc. #47, Exs. 1, 2 & 3.)

Saxon and Dorsey admit to receiving a demand letter.  (Doc. #47, Exs. 1 & 2.) Cleveland cannot recall whether Saxon received a demand letter; however, he does not dispute that a demand was made on Saxon or that he received a demand letter.  (Doc. #47, Ex. 3.)  Bezlia testified that all Defendants were provided written notice of default through a demand letter dated May 11, 2011.  (Doc. #36-2, Ex. F.)  Despite demand, all outstanding amounts owing under the Loan Documents remain unpaid by Defendants and are immediately due and payable.

**B.     Procedural History**

On October 27, 2011, RREF RB-AL filed its Complaint against Saxon, Cleveland, and Dorsey, asserting claims for breach of contract, money had and received, unjust enrichment, and account stated based on the breach of both the Saxon Loan and a separate loan made to Cleveland.  (Doc. #1.)  On June 27, 2012, however, RREF RB-AL filed an

---

by Cleveland.  However, none of these discrepancies are material for purposes of this summary judgment opinion.  Moreover, while there is some question as to whether Cleveland mistakenly responded to the discovery requests propounded upon Saxon in his individual capacity, from a review of these responses, it appears to the Court that Cleveland was intending to respond on Saxon's behalf, and therefore, it will treat these discovery responses as responses from Saxon. (Doc. #47, Ex. 3.)

Amended Complaint, abandoning the claims based on a breach of the Cleveland loan following that loan's sale to an unrelated third-party. (Docs. #33, 46.) As a result, the following claims are pending in this action: (1) breach of contract based on the Saxon Loan against Saxon (Count I); (2) breach of contract based on the Saxon Loan against Dorsey and Cleveland as Guarantors (Count II); (3) money had and received against Saxon, Dorsey, and Cleveland (Count III); (4) unjust enrichment against Saxon, Dorsey, and Cleveland (Count IV); and (5) account stated against Saxon, Dorsey, and Cleveland (Count V). (Doc. #33.)

As of November 9, 2012, the date RREF RB-AL filed the motion for summary judgment currently before the Court, RREF RB-AL claims damages in the total amount of $807,365.14, which consists of $639,448.83 in outstanding principal, accrued and unpaid interest in the amount of $119,857.43, plus pre-judgment interest accruing from November 9, 2012, to the date of judgment at the per diem rate of $93.25. (Doc. #46.) It also seeks to recover attorneys' fees in the amount of $48,058.88 (as of November 9, 2012), plus post-judgment interest at the statutory rate and costs of court.[5] (Doc. #46.) Interest, attorneys' fees, and costs of collection continue to accrue.

On November 9, 2012, RREF RB-AL moved for summary judgment on its claims against Defendants for breach of contract (Counts I and II), money had and received (Count III), and unjust enrichment (Count IV). (Doc. #45.) RREF RB-AL does not seek summary judgment on its account stated claim (Count V). Defendants jointly oppose Plaintiff's

---

[5] A receiver was appointed over the collateral securing the Saxon Loan pursuant to this Court's Order dated February 23, 2012. (Doc. #17.)

motion.  (Doc. #53.)  The parties arguments are discussed in turn below.

## IV. DISCUSSION[6]

### A.    Plaintiff's Breach of Contract Claims

#### 1.    Saxon

Count I of the Amended Complaint asserts a claim against Saxon, the borrower, for breach of contract based on its failure to repay all monies owed on the Saxon Loan.  Under Alabama law, the elements of a breach of contract claim are: (1) that a valid contract exists between the parties; (2) that the plaintiff performed under the contract; (3) that the defendant failed to perform; and (4) that the plaintiff was damaged as a result.  *Reynolds Metal Co. v. Hill*, 825 So. 2d 100, 105–106 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999)).  Moreover, a promissory note, like the one at issue here, "is a form of a contract; therefore, it must be construed under general contract principles." *Bockman v. WCH, L.L.C.*, 943 So. 2d 789, 795 (Ala. 2006).

In this case, the Saxon Loan was assigned to RREF RB-AL, thereby making it the holder of the note and, as such, entitled to enforce the loan instruments and collect from Defendants the amounts owed thereunder.  (Doc. #36-2.)  The evidence further shows that there is no dispute that a valid contract exists between RREF RB-AL, pursuant to the First Assignment and Second Assignment Documents, and Saxon in the form of a promissory note, which is before the Court.  (Doc. #36-2.)  There is no genuine dispute that Saxon

---

[6] As this Court's jurisdiction is based in diversity, the substantive law of Alabama governs this suit.

received the proceeds of the loan.  There is also no genuine dispute that Saxon defaulted under the terms of the note and has failed to repay the Saxon Loan in full.  As such, there is no genuine dispute of material fact exists as to Saxon's liability on the note, and, therefore, Plaintiff is entitled to a judgment as a matter of law against Saxon on Count I of the Amended Complaint.[7]  *See Smith v. Northside Restaurant Corp.*, 430 So. 2d 870, 872 (affirming summary judgment in favor of lender when the fact of default on the note and breach of the agreement was not controverted by the borrowers).

### 2.    **The Guarantors**

Count II of the Amended Complaint asserts a claim against Dorsey and Cleveland, as Guarantors, for breach of contract based on their failure to repay all monies owed on the Saxon Loan.  "Every suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty."  *Sharer v. Bend Millwork Sys., Inc.*, 600 So. 2d 223, 22–26 (Ala. 1992) (quoting *Delro Indus., Inc. v. Evans*, 514 So. 2d 976, 979 (Ala. 1987)).  "It is generally recognized that the rules governing the interpretation and construction of contracts are applicable in resolving a question as to the interpretation or construction of a guaranty contract."  *Pate v. Merchants Nat'l Bank of*

---

[7]    Notably, the only evidence submitted by Defendants in opposition to Plaintiff's motion for summary judgment was Plaintiff's own evidentiary submission.  (Doc. #54-1.)  Thus, for all practical purposes, Plaintiff's summary judgment evidence, which includes admissions that Saxon executed the note and failed to pay all amounts due thereunder, and that the Guarantors executed the guarantees and failed to pay all amounts due under the Saxon Loan, is uncontroverted.

*Mobile*, 428 So. 2d 37, 39 (Ala. 1983).  "[W]hen the terms of a [guaranty agreement] are unambiguous, the construction of the contract and its legal effect become questions of law for the court."  *Dill v. Blakeney*, 568 So. 2d 774, 777 (Ala. 1990).

Here, both Dorsey and Cleveland admit to signing their respective commercial guarantees, the terms of which are both unambiguous and undisputed.  Both Dorsey and Cleveland also admit that Saxon defaulted on the underlying note and that they, as Guarantors, have failed to pay all outstanding amounts owing under the guarantees.  Accordingly, the Court finds that Plaintiff has properly supported its summary judgment motion as to its breach of contract claims against Dorsey and Cleveland based on the guarantees.  Further, because Defendants have failed to present any evidence creating a genuine dispute of material fact as to this claim, Plaintiff is entitled to a judgement as a matter of law as to Count II of the Amended Complaint.

**B.     Plaintiff's Money Had and Received and Unjust Enrichment Claims**

Count III and IV of the Amended Complaint assert claims against Defendants for money had and received and unjust enrichment.  These claims derive from principles of implied contract and restitution as well as the equitable principle that one should not be unjustly enriched at the expense of another.  *See Epps Aircraft, Inc. v. Exxon Corp.*, 859 F. Supp. 533, 535–36 (M.D. Ala. 1993) (discussing Alabama law).  To recover on a claim for money had and received under Alabama law, a plaintiff must "prove facts showing that defendant *holds* money which, in equity and good conscience, belongs to plaintiff. . . ."  *Id.*  "To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that:

(1) the defendant knowingly accepted and retained a benefit; (2) provided by another; (3) who has a reasonable expectation of compensation." *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095 (Ala. 2008). One is unjustly enriched if his retention of a benefit would be unjust. *Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.,* 77 So. 3d 139, 145 (Ala. 2011).

The crux of these claims is that there must be a showing that a defendant actually received or holds the money, that is, has been enriched. *See Epps Aircraft*, 859 F. Supp. at 536. A defendant cannot be unjustly enriched if it does not have in its possession any money belonging to the plaintiff. In this case, the undisputed evidence demonstrates that Saxon received a benefit—the proceeds of the Saxon Loan—from the lender and that Saxon has failed to repay these monies under the terms of the Loan Documents. The undisputed evidence further demonstrates that RREF RB-AL, as assignee of the lender, reasonably expects the Saxon Loan to be repaid in accordance with its terms. Thus, Plaintiff is entitled to a judgment as a matter of law against Saxon as to Counts III and IV of the Amended Complaint.

However, there is insufficient evidence from which the Court can conclude that Plaintiff has met its prima facie burden as to its money had and received and unjust enrichment claims against Dorsey and Cleveland. There is no evidence before the Court indicating that Dorsey received or holds proceeds from the Saxon Loan. Further, while Dorsey indicated in his request for admission responses that Cleveland received $200,000

in proceeds,[8] this evidence is not sufficiently probative for the Court to conclude that Cleveland did indeed receive such proceeds and that he received such proceeds from the Saxon Loan.  In sum, because Plaintiff has not established that either Dorsey or Cleveland received or holds any proceeds from the Saxon Loan, Plaintiff is not entitled to a summary judgment to the extent Counts III and IV of the Amended Complaint are asserted against Dorsey and Cleveland.  *See Bank of Am. Nat. Trust and Sav. Ass'n v. Envases Venezolanos, S.A.*, 740 F. Supp. 260 n.6 (S.D.N.Y. 1990) (noting that claim for money had and received "can only be brought against the recipient of the money and not against guarantors").

## C.    Attorneys' Fees

Plaintiff also seeks to recover attorneys' fees and costs incurred in collecting the amounts owing under the Saxon Loan.  Both the promissory note and the commercial guarantees provide that Defendants shall pay the costs and expenses of collection and enforcement, including reasonable attorneys' fees.  Moreover, in Alabama, contractual provisions relating to the payment of attorneys' fees are enforceable.  *See, e.g., James v. James*, 768 So. 2d 356 (Ala. 2000).  Thus, the Court is satisfied that Plaintiff is entitled to recover from Defendants, jointly and severally, its costs of collection and enforcement, including attorneys' fees in this action, pursuant to terms of the Loan Documents.

---

[8]  Specifically, Dorsey admitted "that Saxon received all of the Loan Proceeds except for $200,000 which was obtained by Clifford W. Cleveland and had nothing to do with this loan." (Doc. #47.)  While the Court assumes that Dorsey is likely indicating that Cleveland received the additional $200,000 resulting from the loan modification, his statement that this amount "had nothing to do with this loan" leaves the Court unsure as to the exact source of the $200,000 Dorsey claims Cleveland received.  More importantly, there is no testimony from Cleveland or other probative evidence that Cleveland received any portion of the Saxon Loan proceeds.

However, the Court is not satisfied that the amount of attorneys' fees currently claimed by Plaintiff is reasonable.  In connection with its Motion for Default Judgment, or in the Alternative, Summary Judgment (Doc. #36), Plaintiff filed an affidavit from its counsel, Heather Lee, who attested that, as of August 8, 2012, Plaintiff had incurred $44,754.20 in legal fees and $3,304.68 in expenses in connection with this matter.  This amount encompassed 197 hours of work and did not take into account the fees and expenses incurred in connection with the filing of Plaintiff's current summary judgment motion and reply brief.  (Doc. #36-3.)  No records have been presented to the Court detailing the amount of work performed or who performed the work (*i.e.,* a partner, associate, or paralegal).  Nor has the Court been presented with any records detailing the amount of time spent on particular tasks or an itemization of the costs claimed.  Therefore, the Court concludes that the representations contained in Lee's affidavit are insufficient to establish the reasonableness of the fees and expenses claim, and Plaintiff will be given leave to supplement the record with the current amount of attorneys' fees and costs sought, which shall include details as to who performed a particular task, how much time was spent performing a particular task, and an itemization of the costs claimed so that the Court can determine an appropriate attorneys' fee and costs award.

**D.    Summary Judgment Evidence**

As a final matter, the Court must address Defendants' argument that Plaintiff failed to properly support its summary judgment motion when it failed to submit the loan instruments and the Bezlia Affidavit with its evidentiary submission in support of its

summary judgment motion.  Appearing to lack arguments of greater substance, this evidentiary argument forms the main basis of Defendants' opposition to Plaintiff's summary judgment motion.  However, given the rulings above, the Court finds no merit in these arguments.

To the contrary, the Court finds that Plaintiff's motion for summary judgment is properly supported.  Not only did Plaintiff submit Defendants' interrogatory and request for admission responses with its summary judgment motion, but it specifically relied on documents that were already part of the Court's record, including the Bezlia Affidavit, submitted in support of Plaintiff's first motion for summary judgment, as well as the Amended Complaint and the exhibits attached thereto.  Reliance on these documents is appropriate, as Rule 56 does not require Plaintiff to resubmit with its summary judgment motion duplicative evidence that is already part of the record before the Court.[9]  Indeed, if any party failed to comply with the directives of Rule 56, it was Defendants, who wholly failed to provide the Court with *any* record citations to support their arguments that factual disputes exists in this case that would preclude the entry of summary judgment in Plaintiff's favor.  In the future, the pot should be more mindful before calling the kettle black.

## VII.  CONCLUSION

Accordingly, for the reasons stated above, it is hereby ORDERED as follows:

---

[9]  *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or *is* genuinely disputed *must* support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials . . . .  The court need consider only the cited materials, but it may consider other materials *in the record*.") (emphasis added).

1.      Plaintiff RREF RB-AL's Motion for Summary Judgment (Doc. #45) is GRANTED as to Count I of the Amended Complaint, and Saxon is liable to Plaintiff for outstanding principal in the amount of $639,448.83 under the promissory note, accrued and unpaid interest in the amount of $119,857.43, plus additional interest accruing at the per diem rate of $93.25 from November 9, 2012, through the date of this Court's judgment;

2.      Plaintiff RREF RB-AL's Motion for Summary Judgment (Doc. #45) is GRANTED as to Count II of the Amended Complaint, and Cleveland and Dorsey, as Guarantors, are jointly and severally liable to Plaintiff for the outstanding principal amount of $639,448.83 under the terms of their respective guarantees, accrued and unpaid interest in the amount of $119,857.43, plus additional interest accruing at the per diem rate of $93.25 from November 9, 2012, through the date of this Court's judgment;

3.      Plaintiff RREF RB-AL's Motion for Summary Judgment (Doc. #45) is GRANTED as to Counts III and IV of the Amended Complaint to the extent those claims are alleged against Saxon, but DENIED to the extent those claims are alleged against Cleveland and Dorsey;

4.      Plaintiff RREF RB-AL's Motion for Summary Judgment (Doc. #45) is GRANTED to the extent it seeks an award of reasonable attorneys' fees and costs, and RREF RB-AL IS GRANTED LEAVE to supplement the record no later than September 27, 2013, with evidence of the amount of attorneys' fees and costs currently sought, along with evidence of the reasonableness of these claimed fees and expenses; and

5.      Plaintiff RREF RB-AL's claim for account stated (Count V) remains pending

before the Court.

DONE this the 5th day of September, 2013.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE